In re Del Rosario, Sebastian M. Medve, Counsel for Appellant, M.O. Craig G. Margulies, Counsel for Appellees, Leo Del Rosario and Zerlyn Fonseca Del Rosario. Good morning, Your Honors. My name is Sebastian Medve. I am the attorney for the appellant, M.O., who is also a creditor in the adversarial proceeding. Do you want to reserve a little time? Yes, five minutes, please, Your Honor. May it please the Court, as the Court knows, the appellant contends that the bankruptcy court made two mistakes, essentially two mistakes of what amount to errors in construction, the first being statutory construction. So they're errors of law, and it's de novo? Yes, Your Honor. In your view, okay. Yes. And statutory construction on the one hand, and construction of the judgment, the creditor's judgment on the other, the latter obviously relating to the concept of res judicata and the bankruptcy court's ability to construe that judgment in a way that is not consistent with what the state court determined. Beginning with the statutory construction... Let's start there, because the state court really didn't determine anything, right? I mean, they determined there was a violation of discovery, gave sanctions. That's really all they determined. In practical terms, yes, but in terms of what the judgment is for, appellant contends that the judgment is for intentional torts, battery and intentional infliction of emotional distress. In order to get to that judgment, the state court necessarily had to find the elements of those torts. But it didn't, did it? Because it imposed it as a sanction. It simply entered a judgment against them because it said you didn't cooperate in discovery, didn't make any real findings, didn't take any testimony, didn't review any documents, didn't have any evidence in front of it. It just entered a judgment at your request or whoever was representing the MO in the state court. That doesn't have any substance to it. It didn't make any determinations. It simply checked a box and said default judgment, entered judgment for the plaintiff, period. Correct. Absolutely correct. But I think that the next step then, and we cited to a case in the brief that a default judgment has the same collateral estoppel effect as a merits analysis. I don't think anybody's challenging that, that there's a ratio to kind of full faith, whatever you want, that the debtors are liable for that amount from that lawsuit. Can't really tell what that lawsuit was about as to them though. I mean, it was for the damages inflicted by their child. That's what you got. What that means, I don't know. I agree, Your Honor. I think that ambiguity, the question is, does that mean that the bankruptcy court can interpret the judgment as to not establishing the causes of action that were stated? Or does the bankruptcy court instead have to say, well, I don't know what exactly was found, but I do know that the causes of action were established. What was alleged? It was alleged, so the complaint basically just said, and as the court knows, it basically said the parents are liable for the conduct of the child. Principles and agents. Basically as in a vicarious liability. Well, no, I mean, vicarious liability depends upon something, and I thought that the state alleged, state claim, state complaint alleged principle liability for the agent being the  It did have an allegation like that. It also had an allegation that they ratified the conduct of the child. I find that hard to believe, right? Because, again, what was the agency that was given for the principle and agent? Ultimately we get to Strang. You say Strang. Strang says, look, this was done within the course of the partnership. Somebody got something bad by bad fraud. It was in the course of the scope of the agency for the business. Here's a child, right, in school, a parent. I'm having a hard time understanding how that can be within the scope of the agency. I don't have a hard time understanding how that was not outside the scope of that agency. So there's a conflict right there, isn't there? There is, I think, if the only basis for the vicarious liability is a principle-agent relationship. What else was alleged? Well, it was a parent-child relationship. But, I mean, if they're in their custody and control, right, that's not true here. We know they were in school. The parents weren't present. They didn't have any control over the child's actions. Sure, but under Civil Code 1714.1, the California Civil Code, there is imputed liability without the parent being present or in control in the moment. That's not what the statute says, right? Well, first of all, is that what was alleged in the complaint? It was not, the code itself was not alleged in the complaint, no. So the relationship was alleged only. Oh, all right, but the relationship principle-agent is common law. Obviously, the code is code. It's statutory. Those seem to be two distinct sources of underlying liability to be imposed vicariously, right? Correct, and then there's also a third one, Your Honor, which is the statutory parent-child liability under 1714.1, and then there is also a common law, California common law parent-child liability, which is the RADA case. Was that raised in the complaint, either? None of these were expressly stated as the basis for the liability in the complaint. We might as well lean into it, too. I thought 1714.1 also limited the damages to $25,000. It limited it to $25,000, and it increases every year from the, I think it's $40,000. It doesn't increase to a million, though. No. And that raises the question about res judicata. Under California law, res judicata or collateral estoppel is discretionary if there are certain elements. It has to be necessary. It has to be actual. It has to be tried. It has to be a final judgment. So the court could decide that it's not going to apply res judicata if it didn't find it to be applicable in its discretion if it gave us a reason, but do you want to go back to the bankruptcy court and try the case on the merits, or do you just want us to determine that the court erred as a matter of law by not giving it the preclusive effect that you suggest it's required? That's a great question, Your Honor. I want you to take a moment and think about that, because I don't see anything in your briefing to date that suggests that you want anything other than reversal, and you're pretty clear on that. Right. And yes, and I think, Your Honors, because of, I think, really the principle argument, the first argument in the brief was the statutory construction. I think that's why we tackled it in that way, is to say, well, you can't dismiss the complaint because the plain language of 523A6 doesn't preclude us from bringing our adversary a complaint. I want you to develop that point, but I do want to press back for an answer on Judge Reverse.  And just enter judgment. Yes. Don't... I mean, not even amend, right? Right. Right. Not give us an opportunity, not give us a trial, just reverse. I think, so strictly on this construction of the judgment, I think that we have arguments for, to basically say that there is nothing really to adjudicate in the bankruptcy court if the dismissal is reversed, because if our judgment has that effect, then we should pretty much as a matter of law prevail on our exception to 523A6. So ideally, yes, if I could have my dream outcome, it would be to have reversal and entry of judgment in the creditor's favor on that exception. For the full million dollars? Yes, Your Honor. But I think the way, the reason that we framed it as a reversal of the dismissal is because, you know, we think, we kind of argued it more under the scope of the statute and the construction of the statute. Let's turn to that, because you get close to five minutes, and that's the meat of it, right? You believe, under Barton-Werfer, in the plain language of 523A6, that you can impute somebody else's conduct in under A6, their intent, to another individual through vicarious liability, correct? I don't know if it's plain language. I mean, I think the difficulty with saying that it's is it plain that that person is standing in the shoes of the other person? And I think that is, it's kind of ambiguous, because... It was plain enough under Barton-Werfer. I agree with that. And it seems like it was plain enough in strength. Well, there we go. Because under Barton-Werfer, they did engage in your textual analysis, right? And the fact that the court relied heavily on this passive voice in 523A2 was critical. And in fact, they went and contrasted that with the other provisions of 523A2, right, in B and C, where they found that there was expressed language that had to be by the debtor. And that's language you're faced with in A6, isn't it? I think that's the strongest argument against our construction. But I think there's other language in Barton-Werfer that detracts from that.   But where is it in A6? I mean, that's the problem. Well, I think what takes away from that passive argument in Barton-Werfer is that basically in the next heading, they say, well, it actually doesn't even matter, right? Because... Did they say that? Or did they say, we look at it to confirm the plain language? Right. Well, I think they said, we made this same decision in Strang, and then the legislature agreed with us. And they basically focused on that. And I think, yes, the strongest argument against our point is that in Barton-Werfer, they set up this... What was the history of A6 in relationship to Strang? Do you know the chronology? That I don't, Your Honor. So, Counsel, you keep talking about vicarious liability, and the statute makes the parents liable. Judge Spraker's talking to you about vicarious imputation of conduct. You've never made that argument, I don't think. I think, you know, it's those concepts, because the wording is very technical. And I think there's often a misspeaking in our briefing as well, which is to say that there's a... It's ignoring the distinction between imputed conduct and imputed liability. And there obviously is a distinction. But I think what it comes down to for our case in particular is that the conduct is not really on the record clearly. So all we have is our understanding of what the liability is. And if the liability is necessarily for conduct that would satisfy the exception, that puts us in the right place. You're at about closing in on two minutes. If this is a good time for you to take a break, we can do that.  Okay. Thank you. Thank you.  May it please the court. Craig Margulies with Margulies Faith LLP on behalf of the Apalis Leo del Rosario and Zerlin Foneca del Rosario, husband and wife, and the debtors in the underlying Chapter 7 bankruptcy case. I've got my timer here. So I believe the panel has hit the nail on the head with the problems for the appellant in this case. I think Judge Kaufman got it right. Judge Kaufman never used the word categorically as his appellant is seeking to have done in this case through the reversal. I think categorically is the word that the appellant is using because the appellant is seeking to create a bright line rule that maybe he can take up on another appellate level. And what Judge Kaufman did is she looked at the facts, she looked at the law, she applied various facts and found that willful and malicious injury by the debtor did not exist anywhere in the record by the appellant in the state court. Pleadings, as your honors touched on, the state court complaint, it was a conclusory allegation that through vicarious liability, the parents were liable for the acts of their son. And the judge found that there were no facts. There was an admission by the appellant that he had no more facts to plead and therefore actually changed her ruling from allowing leave to amend through the admission to grant no amendment and dismiss with prejudice. So I think there was a waiver. Let me just clarify that with you. I just want to make sure. So what you're saying is at some point in her decision or in the process of making the decision, she had a conversation with plaintiff's counsel and suggested, if you want me to grant you leave to amend so that you can further explain why there's liability here or not liability, how you satisfy the statutory requirements of 523-86, I'll give you the opportunity. And plaintiff said, I don't have anything further to add. So I'll stand on the record I've made and this is it. Exactly. I started to address that part. It was in her original tentative ruling, and I was submitting on the tentative but for the leave to amend aspect. And at that point, and you can see it in the transcript, which is in the record, appellant counsel spoke up and said, I don't intend to amend. I have no further facts to allege. And then she asked him, so basically you're agreeing that this could be dismissed with prejudice. And he said yes. So I think there's a stopple and there's a waiver by the appellant to even think about going back to the bankruptcy court for further amendments. And this complaint that we're here before is a first amended complaint. If the original complaint actually misstated everything, and we had a motion to dismiss on that first, it misstated the record and said that the parents were liable for battery and intentional infliction of emotional distress. It didn't mention the word vicarious liability anywhere in the original complaint, the adversary complaint. So we moved to dismiss for failure to state a correct cause of action under 523A6. And in response, the first amended complaint was filed stating no, it is solely based on vicarious liability and then attaching the requisite pleadings from the court below. So this is a determination on, what I'm trying to say is that they asked for the court to apply res judicata collateral principles only. They didn't want a trial. They didn't want an opportunity to present evidence in the bankruptcy court. They wanted the court either to say it's sufficient on this with what we've got here in front of us by your amended complaint and in opposition to the motion to dismiss. It's either an up or down. That's it. That's correct, Your Honor. All right. So I think, as I said, Judge Kaufman did get it right with her analysis and further finding that there were no state court. I'm sorry. I lost my train of thought here for a second. That there were no findings by the state court that the defendants themselves injured the plaintiffs or acted willfully and maliciously and that the issues were not necessarily decided. The collateral stopper was addressed by the bankruptcy court. And based on the underlying state court judgment being provided by default judgment, and as opposing counsel stated, there are certain times where finding non-dischargeability based on res judicata and collateral survival in a default situation is possible. And that was, for example, in a fraud scenario where the exact actual elements for common law fraud and A2A have the same elements for actual fraud and, therefore, in a default judgment scenario, it can be brought up in that way on res judicata collateral stopper. But when you have battery and intentional infliction of emotional distress, the elements, as appellant actually sought to put before the court in a reply, putting a state court case in for each one, the elements of battery and intentional infliction of emotional distress don't align with willful and malicious injury by the debtor in any regard. It doesn't meet the standard for willful, which is different under battery elements, as well as intentional infliction of emotional distress. For example, intentional infliction of emotional distress says that it can be reckless. Well, there's a Supreme Court precedent that reckless doesn't rise to the level of willfulness. And secondly, the elements for both of those statutes don't touch on the issue of malice or prove the subjective intent to cause harm by the debtor. So there's no way res judicata or collateral stopper could have been found simply by the state court stating that we'll enter judgment on behalf of the plaintiff.  And the court touched on the fact that the appellant has relied heavily on Burton-Weifer. And so I'd like to address a couple of points about Burton-Weifer because I think their reliance on it is misplaced, misinterpreted. And Burton-Weifer is, in one part, distinguishable. Burton-Werfer. Burton-Werfer.   I won't tell Judge Wilkins to do it. Burton-Werfer. Yeah. So, yeah, Judge Barrett spoke for the unanimous court and addressed the specific issues of 523A2A, non-dischargeability for fraud, and liability for a fraud, particularly where the debtor did not personally commit the injury. Right? So Burton-Weifer is specific on those issues. And the appellant is seeking to forget that it's based on fraud and 523A2A specifics and the plain language of those statutes and tries to generalize it to apply to 523A6. And it's just not proper. And I think Burton-Weifer, as the court also acknowledged, distinguished the subsections A2B and A2C, stating that those sections require some culpable act on the part of the debtor. And so I think Burton-Weifer is actually supportive of our side, even though it's heavily relied on by the appellant, because it makes the distinguishing factor of the plain language of the statute, which is applicable to the A6 matter that says, or the statute that says, by the debtor. Well, the passive language allowed for what were basically some state law concepts that kind of fill the gap, right? That was the point. Right. When it didn't have to be done by the debtor, you could look at other theories that the Supreme Court said were out there and that they believe articulated in Strang, and certainly there was some follow-up from Strang. And what you would say is when the language by the debtor is inserted, it's very hard to say by the debtor or deemed by the debtor in A6, right? That's the point?  Okay. Got it. And speaking to Strang, I think appellate seeks to hang its hat on this 1885 case where Strang held that a non-bad actor partner was liable for the acts of his partner's fraudulent acts, despite that the statute concerning fraud and embezzlement had the of the bankrupt language in it, which was later removed by Congress as to fraud. So it's Strang is really a case at this point that courts have relied on for agency principles. Do you think that Strang survives Bartenwerfer? I'm sorry? Do you believe Strang survives Bartenwerfer? I think it has very limited. This is the philosophy part of the argument. I think it has very limited applicability in an agency or partnership principles, and that's really it, and in a fraud context for those circumstances. Well, I mean, I guess that's what I'm asking. Do you think it's limited to 523A2A, which has now been revised through Bartenwerfer, or does it apply to the other subsections of 523A? I would think it would be the former, that it applies strictly to 523A2. Do you know if any court has really picked up these issues otherwise? Well, there's been a lot of cases that have addressed these issues, particularly. . . Post-Bartenwerfer? Post-Bartenwerfer, there was a case, yes, and it was cited in the opinion. It's the Coons case, I believe, and the Coons case was where a wife stole funds from her employer, and it was a 523A6 case, A2A and A4, and this was a 2024 bankruptcy of the Northern District of Ohio. So it's a bankruptcy case, obviously not binding on this court, but the bankruptcy court held that vicarious liability is not actionable under 523A6 because it's written in the active voice and identifies the debtor as the bad actor, and then in contrast, it cites to the A2A and A4 are written in the passive voice, so picking up on Bartenwerfer, I probably still won't stop saying Bartenwerfer, and so the universe, it said they're written in the passive voice and don't identify a bad actor, so the universe of bad actors is not limited to the debtor, and it said language of 523A6 undercuts application of the vicarious liability principles of Bartenwerfer to claim seeking an exception to discharge for willful and malicious injury to a plaintiff. So I think that's the only case I saw that was post-Bartenwerfer on that issue. And it supports you, doesn't support them? It does, and it's also cited by Judge Kaufman. Your time's kind of running up. I want to offer you the opportunity to address counsel's remarks as to California Civil Code 1714.1 if you want to. So obviously it's limited to the $25,000, as the court pointed out, but I don't think any amount of money is dealing with the legal issues to support and approve the court below's ruling. I don't think any amount of money is applicable to the situation. Obviously, seeking a million dollars is contrary to that statute, which they're relying on. But I think California law doesn't apply to federal Baldwin, for example, that says that the bankruptcy courts and the federal courts determine what is nondischargeable. So just because there's a relationship between a parent and a child that's held under state law to apply, it doesn't mean that it meets the standards for 523A6 by the debtor, which is determined by the bankruptcy court, not by a state court. So I don't see that citing to California finding this parent-child relationship as applicable unless you can then convince the bankruptcy court and apply it to 523. Did you understand that to be the basis of the default judgment in the state court? The basis of the default judgment was based on discovery sanctions, right? But was it part of the allegations within the first amended complaint or whatever the amended complaint was? The only allegations was vicarious liability. That was it. No statutory? I'm sorry? No statutory reference? I don't believe so. I don't believe so. I could be wrong on that, but I don't believe so. I think it was simply based on alleging vicarious liability. Okay. Well, you're at your time unless somebody has a further question. Thank you very much. Thank you. Thank you. Appreciate your time. I think an interesting point that I should address first is whether String survives Barton-Werfer, and I think it does. I think Barton-Werfer in part was decided based on String, and on a lower level it was. The actual Ninth Circuit opinion in Barton-Werfer that launched the case off relied on String and Ciccini. Ciccini almost entirely relies on String. And you think Ciccini survives Barton-Werfer? I do. I think that the pathway is from String in 1885 to Ciccini to Barton-Werfer. But those concepts have never been applied as to 523-86. They've always been applied as to 828, as to fraud. Yes. I mean, that's the distinction, obviously, is that Barton-Werfer didn't have a chance to deal with 523-86. But Barton-Werfer relied on Ciccini in the bankruptcy court and in the Ninth Circuit. And Ciccini is a 523-86 case. So that's sort of where I see String surviving with Barton-Werfer. Another point that was made by counsel was that the state law, that the bankruptcy court determines whether the exception applies, which is correct. But Barton-Werfer expressly said that we take the state law in determining the liability. We take it based on the state law. What does that mean here, though? That's the problem. The default judgment doesn't give you whatever state law you impose vicarious liability upon. Yes. I mean, I think the judgment literally doesn't provide anything in that regard. But we're left with a complaint, right? Well, I think we can look to the complaint, but we can also look to the cause of action. Well, that's the complaint. Right. But the cause of action depends upon the factual allegations within the complaint, and that's there for the child. Certainly nothing. So it really is only vicarious liability. I mean, it's kind of a circle at that point. Yes. I mean, I think practically, you know, it's not clear from the record. It's not in the record necessarily that it was one way or the other. But practically speaking, it has to be vicarious liability in some regard. Right, right. But in terms of a sort of technical, legal technical sense, to establish the cause of action, right, you have to meet these elements. You have to say that the defendant intended to cause bodily harm to the defendant. Otherwise, the cause of action fails. So you can't have— Certainly as to the child. And you're over your time, so I don't want to get too far. Okay. Thank you, Your Honors. No other questions? No, we're good. Thank you very much. Thank you so much. Thanks very much. Thanks for your good arguments. On your submission, and we'll get your written decision as soon as we can. Thank you. Okay, thank you.
judges: Lafferty, Spraker, and Gan